5  193<br>171  335

## WALKER *v.* PHYSICK.

The assignment of land, on which a perpetual rent has been reserved, declared in the *habendum* to be "under and subject to the payment of the said rent as the same shall accrue for ever," does not create any liability by the assignee to indemnify his assignor for payments of rent accruing after the assignee has assigned over, which were compelled under the personal covenant in the original ground-rent deed; and this whether the assignment be by deed poll or indenture.

CERTIFICATE from the Nisi Prius.

*February* 18—*April* 15, 16. This was a case stated for the decision of the court, whether the plaintiff was entitled to recover, all questions on the form of the action being waived. The case was

this : In 1837, Latimer, by indenture, in consideration of the payment of taxes and the performance of covenants, which, on the part of Walker, were to be performed, conveyed certain land to Walker in fee-simple, yielding and paying a certain yearly ground-rent, with a clause of distress and re-entry; a covenant for payment of the rent by Walker, for himself, his heirs, executors, administrators and assigns; and a clause of redemption by payment of a sum certain within ten years. In 1838, Walker, by a deed in the form of an indenture, but not sealed by Physick, in consideration of $4,082 50, paid by Physick, granted the said property to Physick in fee, in which deed the conveyance reserving the ground-rent was recited. Following the clause of *habendum*, the deed continued —"under and subject, nevertheless, to the payment of the aforesaid yearly rent-charge or sum of, &c., so as the same shall hereafter accrue and grow due unto the said Latimer, his heirs and assigns for ever," with a special covenant of warranty of the premises, "subject as aforesaid," by Walker to Physick.

In January, 1841, Physick aliened to Wharton. In 1843, Latimer recovered judgment against Walker for the arrears of ground-rent which had accrued *since the alienation by Physick*, up to which period the rent had been paid. Walker having paid this judgment, whether he had a cause of action, therefore, against Physick, was the question argued here in December Term, COULTER, J., being absent, and afterwards at March Term, before all the judges. The late Mr. Justice KENNEDY had given judgment for the defendant, at Nisi Prius, for the following reasons :

" Although it may be that, in the purchase of an estate encumbered with the payment of moneys, the purchaser will be held liable to indemnify the vendor against the payment of the same, if it appears from the terms of the contract between them, for the purchase, or perhaps *aliunde* from what passed between them at the time in relation thereto, that it was clearly their intention that the purchaser should do so; as by its appearing, for instance, that the encumbrances were regarded as part of the consideration or price which he was to pay for the estate ; yet, unless this should appear clearly to be the case, I apprehend that the purchaser would be under no personal obligation to indemnify the vendor, after the latter has made and delivered to the former a deed of conveyance, in full execution of the contract, without requiring or taking any express engagement from the purchaser to indemnify him against paying the encumbrances, but stating merely in the deed that he conveys the estate, subject to all existing encumbrances upon it ; and this, I

think, may be considered as the principle upon which the Pennsylvania cases cited by the counsel, in argument for the plaintiff, in support of his claim, were decided; and if any of them have been carried beyond this, they must be regarded as having been forced to the utmost verge of construction, in order to meet the exigency that occurred of indemnifying the vendor. The terms, 'to have and to hold, subject,' &c., are certainly not well suited to convey the idea that the purchaser shall pay the encumbrances which exist against the estate at the time of the purchase, or that he will indemnify the vendor against the payment of them, and more especially when they are introduced into the *habendum* of the deed conveying and assigning the estate. The natural purport or meaning of them, then, would seem to be rather a qualification of the estate or interest intended to be conveyed; for, where the whole estate is transferred by the premises of the deed, without any mention of the encumbrances, the mention of them in the *habendum*, as for example, 'to have and to hold the estate as described in the premises, subject to all encumbrances,' &c., would seem to be proper, and perhaps necessary, in order to prevent the purchaser from having recourse to the vendor for redress, in case the estate should be taken from him to satisfy the encumbrance. The rational construction of a deed of assignment in such form, *per se*, would seem to be, that the vendor being willing to sell or part with the estate without a covenant from the vendee, either to pay the encumbrance or indemnify him against the payment thereof, made the deed in that form; and the vendee being willing to take the estate with the encumbrances upon it, and to run the risk of the estate being proceeded against in his hands for the payment of them, accepted the assignment without requiring any thing of the assignor to protect or keep him indemnified against them. In England, however, it seems to be the practice in the profession, for the lessee to take from the assignee a bond or covenant to indemnify, and not merely to assign by deed-poll; per Littledale, J., in Burnett v. Lynch, 5 Barn. & Cress. 589, (12 E. C. L. R.;) and per Denman, C. J., in Woolveridge v. Steward, 3 M. & Scott, 561, (30 E. C. L. R.;) and it may be that the courts of equity there look upon this practice as not only founded upon very equitable principles, but as producing a provision in favour of the vendor generally, so just and reasonable in itself, that no assignee could well object to it, and that it, therefore, may be regarded as having entered into the minds and understandings of the parties in making an executory contract for the sale of a leasehold estate, so as to authorize a court of equity, upon a bill to

enforce the specific performance of such contract, to direct an indemnity to be given by the vendee to the vendor, though no mention be made thereof in the contract itself: *vide* Staines *v.* Morris, 1 Ves. & Bea. 8; and Wilkins *v.* Fry, 1 Mer. 244. The furthest, I take it, that a court of equity has gone in decreeing a bond or covenant of indemnity to be given after an assignment has been executed by the lessee, and accepted by his assignee without such indemnity, is to decree it, provided the lessee can establish that it was agreed between them in any way, even by parol before the assignment was made, that such indemnity should be given; Pember *v.* Mathers, 1 Bro. Ch. Ca. 52; where Lord Thurlow did not think himself at liberty, nor was it asked of him to make a decree for such purpose, without proof of some such agreement having been made, and as it was alleged to have been made, and, indeed, proof given of it by one witness, which, however, was not sufficient, seeing it was denied by the assignee, the chancellor directed an issue to try the fact, whether such agreement or promise had been made or not, and upon its being found in favour of the lessee, a bond of indemnity was accordingly decreed to be given by the assignee.

"Then, if there be no express agreement between the parties, that a bond or covenant of indemnity shall be given by the purchaser of a leasehold estate, and he accept of an assignment in full execution of their contract, from the lessee, though it be granted to him to hold the same, *subject* to the payment of all rents becoming due thereon *in future*, and the performance of all covenants therein contained, yet he will only be liable to pay and to perform as long as he shall continue to be the assignee of the estate, and this merely on the ground of the privity of estate, which exists between him and the lessor, which makes it his duty to pay the rent; and if, by his default in this respect, the lessee, his assignor, shall be made to pay it, he will be answerable to him to make compensation for the loss or injury thereby sustained. Upon this principle the case of Burnett *v.* Lynch was decided. It was tried in 1825, before Best, C. J., who instructed the jury, that the defendant having accepted the assignment of the lessee's interest, under the lease, subject to the performance of the covenants therein contained, was liable in damages to the plaintiffs, (who were the executors of the lessee,) for all those breaches of duty, (which in the lessee would have been breaches of the covenants in the lease,) committed *during the time* he, the defendant, continued *assignee of the term;* and the jury accordingly gave a verdict in favour of the plaintiffs for £1350, the amount which they, as executors of the original lessee, had been

compelled to pay by reason of the default of the defendant to per-
form the covenants that ought to 'have been performed while he
was assignee of the term. A motion for a new trial was afterwards
made in the King's Bench, but, after full argument by counsel on
both sides, the Court of King's Bench discharged the motion, thus
approving the instruction given by Mr. Chief Justice Best to the
jury. Mr. Justice Littledale, one of the judges of that court at
the time, doubted at first whether any action at all could be main-
tained by the lessee or his representatives, for such cause, and ob-
served there was no instance of any such action in any of the books.
Mr. Justice Bayley also states that the duty which the defendant
neglected to perform, that rendered him liable in that case to re-
dress the plaintiff, was *commensurate with the time during which
the assignee, the defendant, had an interest in the premises.* Thus
showing distinctly that beyond that time the assignee, when, by
having assigned, he had ceased to have an interest, would not be
liable. It is also laid down in Comyn's Landlord and Tenant, 2d ed.
272–3, that when the lessor has recovered rent from the assignee, and
then the assignee assigns, and the lessor sues the lessee for the rent,
after the assignee's assignment, the assignee will not be liable to
the lessee upon an implied undertaking to save the lessee harmless.
For this the case of Mills v. Harris, tried, as there stated, before
Mr. Justice Bayley in 1820, was cited in a note, upon whose in-
struction the jury gave a verdict for the defendant, and the Court
of King's Bench refused a rule to set aside the verdict. This case
is also referred to by Ld. Chief Justice Denman, in delivering the
opinion of the Court of the Exchequer Chamber, in Wolveridge v.
Steward; but there it is said to have been tried before Lord Ten-
terden, who nonsuited the plaintiff on the trial, and that the Court
of King's Bench, on motion for a new trial, confirmed his lordship's
opinion by refusing the rule, on the ground that the words, to hold
*subject to the payment* of the rent and performance of the condi-
tions contained in the lease, were not words of agreement, but
merely descriptive of the obligations to which the assignee would
be liable as between him and the lessor. But the case of Wolve-
ridge v. Steward, just mentioned, and reported in 3 Moore & Scott,
561, by the Court of Exchequer Chamber on writ of error from the
Common Pleas, is on all-fours with the case under consideration;
the assignment there was made by deed of indenture executed by
both parties, and was made subject, as here, to the payment of the
rent and the performance of the covenants and agreements reserved
and contained in the original lease. The action was first instituted

in the Common Pleas, and decided there in 1832, on demurrer to one of the defendant's pleas, (9 Bing. 60,) stating that, before the several sums for the rent mentioned in the declaration, or either of them, became due and payable, as in the declaration above alleged, the defendant duly assigned the demised premises, and all his estate and interest therein, to J. E. Foley.   The Court of Common Pleas gave judgment for the plaintiff, which was reversed in the Exchequer Chamber, and judgment given there for the plaintiff in error, the defendant below.   The case of Mills v. Harris does not appear to have been mentioned or brought to the notice of the Common Pleas, though the case of Burnett v. Lynch was, and would seem to have been relied on, by some of the court at least, as a decisive authority in favour of the maintenance of the action, which, as it appears to me, was a mistake; for Mr. Chief Justice Best placed the right of the plaintiff to recover expressly on the ground that the breaches of covenant, for which the recovery in damages was had against the lessee, happened *during the time that the defendant continued to be assignee*, and as such was bound to have performed the covenants; and upon this same ground Mr. Justice Bayley, as has been shown above, held the plaintiff entitled to recover; and the other two judges, though they came to the same conclusion, did not, it is true, mention the same ground specifically, yet they said nothing going to show distinctly that that was not the ground of their opinions.   But in the last case of Wolveridge v. Steward, the very point was made and decided, as it would seem, by the judges of the King's Bench, and the barons of the Exchequer unanimously, in favour of the assignee, that he was not liable by the terms of the assignment, either to the lessor or the lessee, for any default in not paying the rent, or in not performing any covenants contained in the lease, which became due, or happened after he had parted with his interest in the leased premises, by assigning the same to a third person.   It was held that words 'subject to, &c.,' did not amount to a covenant on the part of the assignee, (nor could they be so construed,) to pay the rent during the whole residue of the unexpired term, and that the lessee, who had been called on to pay the rent, which had fallen due after the defendant, his assignee, had assigned to a third person, who failed to pay it, could not recover the same from his assignee in an action of covenant.  The court were of the opinion that the words, 'subject to, &c.,' were merely words of qualification, and not of contract, and such would have been their construction of them if the question had been entirely new.   The court said, also, it could perceive nothing in the inden-

ture which tended to prove that the words were meant, to be used in any other sense than that which would be naturally attributed to them in the place in which they occurred, and that if the assignor really intended that the assignee should covenant with him to pay the rent, and perform every covenant during the term, and thus become liable, not only for his own defaults, but for those of all subsequent assignees, and the assignee really intended to be bound also himself to that extent, was it not to be expected that they would have expressed themselves in distinct unambiguous language? especially as it was the usual practice in cases of that kind, when such a liability was intended, for the assignee to enter into a bond or an express covenant of indemnity with the assignor against the covenants in the original lease.

" It was said by the court further: a very just remark was made by the counsel for the plaintiff in error, ' that it was the duty of a party who intends to bind another by a covenant in a former formal instrument, to insert it in that instrument, in distinct and intelligible terms, by which the party to be bound cannot be deceived; and not to call upon the court to infer such a covenant from the words, which are at least equivocal, and which one party may never have meant to use in the sense ascribed to them by the other.' Now, every consideration here which is brought to bear in favour of the assignee of a term of years, merely as going to show that he ought not to be held liable to indemnify the lessee against the payment of rent falling due after the assignee has assigned to a third person, unless it shall have been so agreed in clear and unambiguous terms between them, seems to operate with infinitely more force in favour of the assignee of an estate, subject to the payment of a perpetual ground-rent. Indeed, it may be doubtful whether agreements are ever made on the part of the assignees of estates in fee, who take them subject to the annual payment to the original vendor, his heirs and assigns for ever, to save and keep harmless the assignors, their heirs and assigns, throughout all time, against the payment of them. But be this as it may, I am inclined to believe this is the first instance in which a suit has been brought, in this state, against the assignee by his assignor, to obtain indemnity for rent paid by the latter on account of the default of his assignee or any subsequent assignee to pay it. It is probable, however, that such cases as the present have frequently occurred in time past; and if so, the circumstances of this being the first instance in which a claim has been made by suit for indemnity, would go pretty far to prove that the prevailing opinion of the profession has been that it

would not lie. The case, however, presents a question in which the citizens of this, and some of the other cities in the state, have an interest; and the question being, perhaps, entirely new, ought therefore, as it appears to me, to be passed on by the court in banc. Under the view which I have taken of it, I am inclined to believe that the plaintiff is not entitled to recover his claim, and therefore direct judgment to be entered for the defendant."

*Meredith*, for plaintiff.—The right is under the express terms of the grant by Walker to Physick, which is "under and subject to the rent." But for this, a purchaser, at his own election, may throw up a bad bargain, and leave his vendor without remedy. Whenever land is sold *subject* to an encumbrance, the rule in equity is, that the purchaser must indemnify the vendor, and this though there has been no express engagement to do so; Sug. Vend. 257; 2 Eq. Ca. Abr. 684, pl. 7; S. C. 7 Vin Abr. 53, pl. 5. The form of action (money paid) was right; Crafts *v.* Tritton, 2 Moore, 411; but that is waived. The great question is the liability under the contract to indemnify; Burnett *v.* Lynch, 5 Barn. & Cress. 589, (12 E. C. L. R;) and Steward *v.* Wolveridge, 9 Bing. 60, (23 E. C. L. R.,) are direct to the point; and though the latter is reversed in Wolveridge *v.* Steward, 3 Moore & Scott, 561, (30 E. C. L. R.,) and no authority in England, the cases stand on an equality here, the weight of the reasoning of the judges being the only authority. Campbell *v.* Shrum, 3 Watts, 60, is to the same point; and it was there held that these words constituted an express covenant. As to the circumstances there alluded to, they are the same here. No doubt an exemption from the rent was one of Walker's inducements to sell, and no doubt it was estimated as part of the purchase-money. It is said that the rent is an estate, not an encumbrance; but Bantleon *v.* Smith, 2 Binn. 146, decides it to be an encumbrance; at all events, it is a charge. The reason of this rule is obvious; the chance of profit being wholly with the last purchaser, he must assume all the liabilities for the property.

*Clarkson*, contrà.—It is of no little weight that these conveyances have been most common for near a century and a half, and no one in the profession, till this case, has ever thought of raising such a claim. This is for arrears after alienation; Burnett *v.* Lynch was for those accruing during the tenancy. It is a familiar principle, on which every one has acted, that the assignee is not liable excepting during his tenancy; Platt on Covenants, 494; Weidner *v.* Foster, 2 Penna. Rep. 23; this new doctrine would

astound every one, for of what consequence is it that he may not
be liable to the landlord, if he is to the original covenantor. The
supposed rule that purchasers are always bound in equity to indem-
nify, is denied; but were it so, it is inapplicable to an express exe-
cuted contract, unless there can be grounds laid for reforming it.
The authority of Mr. Sugden is Pember v. Mathers, 1 Bro. C. C. 52;
but that is nothing but Campbell v. Shrum. There was evidence
of an agreement, and an issue directed to try the fact. Steward v.
Wolveridge was on an indenture; here is a deed poll. But that case
is reversed in the Exchequer Chamber, 3 Moore & Scott, 561, and
the reasoning there by Lord Denman is the best argument. The
view taken is, that in the *habendum* this clause serves but to qua-
lify or explain the previous general words of grant; Campbell v.
Shrum proceeded on the intention of the parties, which, after all,
is the only object, for the words do not, *per se*, make a covenant;
Blank v. German, 5 Watts & Serg. 36. This rule applies to en-
cumbrances, but a ground-rent is not an encumbrance, but an estate
of Latimer's, in our land; Irwin v. Bank of United States, 1 Barr,
349. In 2 Jarm. on Wills, 553, it is said these words in a devise
of mortgaged premises will not even exonerate the personalty, but
are merely words of description; Courtney v. Taylor, 7 Scott,
N. R. 749. The deeds are legally and formally drawn; they
have every part complete and orderly, and it would be unreason-
able to apply the same rule of construction to such instruments,
and an informal memorandum, such as there was in Campbell v.
Shrum; every of these parts have their own uses. In Wood's
Conv. 256, sect. 4, it is said the clause of *tenendum* is now
omitted by reason of the statute *Quia emptores*: that is not in
force here. In the deed from Latimer, there is a full and orderly
covenant; in Walker's deed that is omitted, and the reference is by
way of recital or limitation, being the words of Walker, not of
Physick; Touch. 115, 116; Rowley v. Addams, 4 M. & Craig;
Onslow v. Corrie, 2 Mad. 330, show that this rule cannot be the
rule in equity.

*Reply.*—Pember v. Mathers does support Mr. Sugden; the legal
title had passed; there was but one witness to a verbal agreement
denied by the answer, and the *circumstances* were held sufficient to
outweigh the answer. These cases are cited merely to show the
justice of the proposed construction. That the estates are distinct
is immaterial; that is so in leases for years; 8 Cow. 206. This
deed is an indenture; it is not necessary that the grantee should

seal it; Platt on Covenants, 9; Co. Litt. 231 a, sect. 374; Touch. 115. An entry under the deed by a party is equivalent to executing it.

*April* 24. GIBSON, C. J.—It is unnecessary to consider whether the conveyance on which the question arises, is an indenture or a deed poll; or whether the obligation, whatever it may be, which it created between the parties to it, arises from a covenant, a parol agreement, or simply from a duty. If the instrument were an indenture, the words "subject to the payment of the aforesaid yearly rent-charge," might create a covenant by force of the decision in Campbell *v.* Shrum, 3 Watts, 60; or either a promise implied from the acceptance of the deed, or a duty independent of contract, for a breach of which an action would lie by force of the decision in Burnett *v.* Lynch, 5 Barn. & Cress. 589. By the terms of the case stated, we are to decide upon the abstract right to recover without regard to form; and whether the obligation of the defendant arose from a covenant, a promise, or a duty, its extent must be the same. But the great rule for the interpretation of covenants is so to expound them as to give effect to the actual intent of the parties, collected, not from a single clause, but from the entire context; or, as was said in Reniger *v.* Fogossa, Plowd. 18, "the scope and end of every matter is principally to be considered; and, if the scope and end of the matter be satisfied, then is the matter itself, and the intent thereof, also satisfied." Now, granting that there was a covenant here, or else a parol contract arising from the acceptance of the deed, what was the scope and end of it? for it can have that extent and no more. Certainly not to bind the grantee of the freehold for ever. No man in his senses would take an estate as a gift which would entail on him a responsibility so endless. The policy of our laws has been to unfetter the transmissibility of property; but, by the interpretation claimed, an inheritance burdened with a ground-rent would be rendered nearly, if not altogether, worthless; and had it been generally supposed to be established, the very plaintiff who now claims it would have been compelled to keep the property in his family for ever, or to sell it with an explicit renunciation of his personal pretension. On no other terms would a purchaser have looked at it. That, however, is not the worst of it. If the original ground tenant might sue his immediate successor for negligence in the payment of arrears by his assignee, the immediate successor could, in turn, sue his assignee for the default of him who had subsequently become

the tenant of the freehold; and thus the matter might go on, producing an endless chain of litigation, lengthened at every change of the ownership. It is unnecessary to depict the vexation and expense of such a state of concatenated responsibility. If the costs of each recovery, with interest, were successively added to the next cause of action, the result could scarce be calculated. The increments of such circuitous litigation would be numerous, and it is most unreasonable to suppose that any one would be willing to involve himself in it, or to respond for the defaults of others, perhaps at the end of every quarter. What then did the parties mean to express by the words "subject to the payment of the yearly rent-charge?" I have not a doubt that they actually meant no more than to say, the grantee was to take an encumbered estate without recourse to the grantor for a breach of the statutory covenant arising from the words grant, bargain, and sell; but I admit that their technical meaning was to create a covenant or promise, not to see the rent paid for ever, but to indemnify the grantor for loss from the grantee's failure to perform his duties to the ground landlord. Now those duties would endure no longer than his tenancy of the freehold, and his covenant would consequently be no more than commensurate with it. But what would be the grantor's recourse if the grantee should convey? If he were to convey to a beggar, with a view to get rid of his responsibility, there might be a grave question, whether that would not be void as a fraud. Probably it would not; but the grantor would have himself to blame for not having taken a covenant against it. If the second assignee were of sufficient substance, the original tenant would have an effectual remedy against him, on the principle of Burnett v. Lynch, by action on the case for consequential damage from his failure to perform his duty to the ground landlord. In that case, a lessee who had assigned by deed poll subject to payment of the rent, brought an action on the case founded in tort for neglecting to pay rent *which had accrued during his tenancy*, and had been recovered from the plaintiff on his covenant; and the action was sustained, though it was admitted that an action would lie on the contract implied from the acceptance of the deed. No case has gone further than that, except Steward v. Wolveridge, 2 Moore & Scott, 83, in which similar words were held to create a perpetual covenant in the assignment of a lease, and in which Chief Justice Tindal said that, looking to the relation of the parties, it was reasonable for the assignor to look for indemnity against liability on his covenants, and that the assignee was no doubt willing to give it. In

that case, the lease was for twenty-one years, and how long it had to run at the time of the assignment, does not appear; but would the chief justice have assumed, as a legal conclusion, that the assignee of a perpetual lease would be willing to bind himself and his posterity indefinitely for the acts of those who might succeed him? Such a case is not within the spirit of his reasoning, inconclusive as it is. But the judgment was reversed on a writ of error in the Exchequer Chamber, 3 Moore & Scott, 561, by the opinion of all the judges, on the ground that the words "subject to payment of the rent," were words of qualification and not of contract. Whether they were properly held to be so or not, it is unnecessary for the purposes of the present case to consider; for, whether the obligation of the assignee spring from contract or from duty, the extent of it must be the same. Now the rent which was recovered from the plaintiff, and for the non-payment of which this action is brought, accrued after the defendant ceased to be tenant of the freehold, and when he was bound for it neither to the plaintiff nor the ground landlord, and he is consequently not liable for it.

Judgment affirmed.